ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| MARÍA ANGIELIS ORTIZ MARTÍNEZ<br><br>Recurrida<br><br>v.<br><br>PEDRO SÁNCHEZ DÍAZ H/N/C HOJALATERIA DEL ESTE<br><br>Recurrente | TA2026RA00192 | *Revisión Administrativa,* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.:<br>CAG-2025-0006960<br><br>Sobre: Talleres de Mecánicas de Automóviles |

Panel integrado por su presidenta, la Jueza Romero García[1], el Juez Monge Gómez y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de mayo de 2026.

Comparece Pedro Sánchez Díaz ("señor Sánchez Díaz" o "Recurrente"), por derecho propio, mediante una *Revisión de Decisión Administrativa* y nos solicita que revisemos una *Resolución* emitida el 20 de febrero de 2026 y notificada el 24 de febrero de 2026, por el Departamento Asuntos del Consumidor ("DACo"). En virtud del referido dictamen, el DACo declaró *Ha Lugar* una *Querella* presentada por Maria Angielis Ortiz Martínez ("señora Ortiz Martínez" o "Recurrida"), por incumplimiento con un contrato de servicios.

Por los fundamentos expuestos a continuación, se *confirma* el dictamen administrativo recurrido.

**I.**

El 8 de mayo de 2025 la señora Ortiz Martínez presentó una *Querella* en contra del señor Pedro Sánchez Díaz h/n/c Hojalatería del Este. Sostuvo que, el 14 de abril de 2025, le entregó su vehículo Toyota C-HR 2022 de color blanco perla al señor Sánchez Díaz, para la reparación de la puerta delantera del lado izquierdo, por motivo de un accidente de auto. Manifestó que, el 17 de abril de

---

[1] Mediante Orden Administrativa OATA-2026-045 de 5 de mayo de 2026, se designó a la Hon. Giselle Romero García en sustitución de Hon. Felipe Rivera Colón.

2025, recibió una llamada del señor Sánchez Díaz en la cual este le indicó que podría recoger su vehículo, sin embargo, sería su ayudante quien haría la entrega de este. Alegó que observó que los plásticos y las varetas del lado izquierdo del vehículo habían sido pintadas, situación que le comunicó al ayudante del señor Sánchez Díaz. Adujo que este último le indicó que dicha pintura se removía con agua. Señaló que, así dispuesto, recogió el vehículo y pagó la suma de $1,600.00, correspondiente al costo de la reparación.

No obstante, explicó que, al llegar a su casa, observó varios defectos, tales como manchas blancas de pintura, la cerradura de la puerta izquierda pintada, el retrovisor izquierdo con puntos blancos de pintura, escurrimiento de pintura, porosidad, y un tono de pintura más amarillo, en lugar de blanco. Además, alegó que aún se observaba un hundimiento en el área donde ocurrió el choque vehicular.

Señaló que, ese mismo día, se comunicó con el señor Sánchez Díaz para informarle sobre los defectos observados, por lo cual acordaron reunirse el 21 de abril de 2025. Sostuvo que, en dicha reunión, le manifestó su descontento al señor Sánchez Díaz, a quien le solicitó la devolución de la suma de $1,600.00 y le requirió el pago por los daños ocasionados. Alegó que el señor Sánchez Díaz solicitó una oportunidad para arreglar las imperfecciones, la cual esta le concedió. No obstante, expuso que su vehículo permaneció con desperfectos. Por lo tanto, solicitó la devolución de la cantidad pagada, así como el pago de la reparación de los desperfectos.

Consecuentemente, el 23 de mayo de 2025 el señor Sánchez Díaz presentó su *Contestación a la Querella*. En síntesis, alegó que aceptó ciertas imperfecciones en el trabajo realizado y que se ofreció a repararlas. Indicó que le ofreció una garantía a la señora Ortiz Martínez, sin embargo, esta la rechazó y solicitó la devolución de la suma pagada. Adujo que las imperfecciones consistían en terminaciones de simple corrección, a saber, la pintura en el retrovisor, el borde de la vareta pintada y el color de pintura utilizado. Asimismo, sostuvo que, posteriormente, la señora Ortiz Martínez accedió a la garantía ofrecida y que, una vez completado el trabajo, no criticó la labor realizada.

El 11 de julio de 2025, notificada el 22 de julio de 2025, el DACo emitió una *Citación a Vista Administrativa*. Así las cosas, el 4 de septiembre de 2025 se celebró la vista administrativa, en la cual testificó la señora Martínez Ortiz, así como Alex Omar Ortiz, quien la acompañó a recoger el vehículo, y el señor Sánchez Díaz.

Posteriormente, el 5 de febrero de 2026, notificada al siguiente día, el DACo dictó una *Citación para Inspección de Vehículo* para el 19 de febrero de 2026. En esta, informó que la Juez Administrativa, la Lcda. Delia Pagán Robles, quien dirigió la vista administrativa, había fallecido. De igual forma, indicó que, tras escuchar la regrabación de la vista y examinar la prueba presentada, el Juez Administrativo recién asignado se encontraba en posición de resolver. Sin embargo, dispuso que sería pertinente realizar una inspección del vehículo.

El 20 de febrero de 2026, notificada el 24 de febrero de 2026, el DACo emitió una *Resolución* en virtud de la cual declaró *Ha Lugar* la Querella. Aquilatada la prueba, el DACo formuló las siguientes determinaciones de hechos:

1. El 14 de abril de 2025, la Querellante contrató los servicios del Querellado para que le realizara trabajos de hojalatería y pintura en un vehículo de motor de la marca Toyota modelo CHR del año 2022 el cual había sufrido un impacto en el área de la puerta conductor. (En lo sucesivo el Vehículo).

2. El precio pactado entre la Querellante y el Querellado para la realización del trabajo de hojalatería y pintura en el Vehículo fue la cantidad de $1,600.00 los cuales la Querellante le pagó al Querellado en su totalidad.

3. El Querellado no le entregó a la Querellante ningún documento relacionado a la garantía que le brindaba a su trabajo.

4. El 17 de abril de 2025, la Querellante recibió una llamada de las facilidades del Querellado donde notificaron que podía pasar a recoger que Vehículo porque ya había sido reparado. Ese día, la Querellante pasó a recoger el Vehículo en las facilidades del Querellado en el pueblo de Yabucoa acompañada del Sr. Alex Omar Ortiz. Cuando la Querellante llegó a las facilidades del Querellado, fue recibida por un empleado del Querellado, quien le entregó un documento identificado ESTIMADO en donde se indicaba que la labor a realizar era la reparación y pintura de puerta y la labor fue establecida en $1,600. El empleado también le entregó a la Querellante la llave de su Vehículo para que se lo llevara.

5. Cuando la Querellante llegó a su residencia en el pueblo de Maunabo, se percató que el trabajo realizado por el Querellado reflejaba las siguientes deficiencias:
   a. plásticos ubicados en la parte de debajo de las puertas estaban pintados, al igual que las gomas de las puertas en el área de los cristales
   b. área de la manija puerta del conducto tenía pintura chorreada
   c. el Vehículo no fue pintado correctamente, ni el lijado, las terminaciones no fueron las adecuados
   d. varetas y plásticos pintados
   e. se notaban en la puerta como parchos amarillos

6. Ante esos hallazgos, la Querellante llamó al Querellado y le indicó las deficiencias identificadas en el trabajo de Hojalatería y Pintura realizado en su Vehículo. El Querellado le informó a la Querellante que el trabajo había sido realizado por su empleado y que no lo había revisado. Le solicitó que le diera una oportunidad porque él mismo realizaría el trabajo y que le llevara el Vehículo.

7. Las partes acordaron que la Querellante llevara el Vehículo a las facilidades del Querellado el 28 de abril de 2025. El 1 de mayo de 2025, el Querellado llamó a la Querellante para que pasara a recoger su Vehículo.

8. La Querellante fue acompañada nuevamente con el Sr. Alex Omar Ortiz Figueroa, cuando la Querellada revisó el vehículo prácticamente tenía las mismas deficiencias identificadas anteriormente, varetas con pintura y ralladas, también se identificó que el bonete y capota tenían porosidad, como si no se hubiese cubierto y fragmentos de la pintura utilizada en la reparación llegó hasta esas áreas. El Querellado no reparó los parchos que se ven en las puertas, ni realizó una terminación adecuada. Retrovisor con pintura. Área de la manija rayada y pintura chorreada. Los colores no macharon, diferencias entre la pintura aplicada con la existente en otras partes del Vehículo.

9. El Querellado, reconoció que había deficiencias en el trabajo y acordó con la Querellante que le llevara el vehículo nuevamente. Sin embargo, la Querellante desistió y solicitó la devolución del dinero pagado. El Querellado le devolvería el dinero porque le estaba dando garantía a su trabajo.

10. El 8 de mayo de 2025, la Querellante radicó ante este Departamento la Querellada de epígrafe. En síntesis, señaló que contrató los servicios del Querellado para la reparación de su Vehículo porque había sufrido un impacto por el área del conductor. Que el trabajo realizado por el Querellado en su Vehículo fue deficiente, que le dio una segunda oportunidad para que corrigiera las deficiencias del trabajo realizado y no las corrigió. Que le solicitó al Querellado la devolución del dinero pagado y este se negó porque solicitó que la Querellante le llevara el vehículo nuevamente porque le había dado garantía a su trabajo, pero no aceptó llevar el vehículo nuevamente.

11. El día de la vista administrativa el Querellado mostró Copias de algunas de las fotos presentadas por la Querellada que se marcaron como los Exhibits I, II, III y IV, del Querellado los cuales forman parte del Expediente. El Querellado indicó que realizó bien el trabajo.

12. La Juez administrativa que presidió la vista administrativa falleció antes de emitir su resolución. Por tazón, el expediente fue referido a otro juez administrativo. Luego de evaluar el expediente, la evidencia presentada, escuchar los testimonios vertidos en la vista administrativa. El juez administrativo asignado en virtud de la Regla 64 de las de Procedimiento Civil, determinó que estaba en posición de emitir la presente la Resolución. Sin embargo, en la vista administrativa en varias ocasiones el Querellado solicitó que se inspeccionara el Vehículo. El nuevo Juez administrativo asignado acogió dicha petición por considerarla que sería un ejercicio favorable para poder emitir una Resolución Justa en este caso.

13. El 6 de febrero de 2026, este Departamento le notificó una Orden a la Querellante en la cual se le ordenó que trajera el Vehículo el 19 de febrero de 2026, para que el Juez Administrativo asignado hiciera una Inspección del vehículo.

14. El 19 de febrero de 2025 alrededor de las 2:30 p.m. el Vehículo fue inspeccionado por el Juez Administrativo en el estacionamiento del Centro Gubernamental de Caguas en presencia de la Querellante y el Querellado. En la inspección realizada se notaron las siguientes deficiencias en el trabajo realizado por el Querellado:
    a. No había uniformidad en la superficie de la puerta y se notaban protuberancia, reflejo de que la superficie de la puerta no fue trabajada adecuadamente.
    b. El color de la pintura no fue preparado correctamente por lo que no hubo uniformidad de color con las otras partes del Vehículo.
    c. El problema de la preparación de la pintura se refleja en unas manchas como amarillas que se ven como paños en la puerta.
    d. Se observó la pintura chorreada en el área de la manija de la puerta del área del conductor.
    e. Las varetas y plásticos ya no reflejaban las manchas de pintura.[2]

Así, dispuso que mediante las partes se configuró un contrato de servicios. Expuso que el señor Sánchez Díaz incumplió con lo pactado, debido a que el trabajo de hojalatería y pintura realizado se alejó de la buena práctica de la hojalatería en Puerto Rico. Ante ello, razonó que la señora Ortiz Martínez tenía derecho a solicitar la resolución del contrato y la devolución de las prestaciones. Por tanto, le ordenó al señor Sánchez Díaz a pagarle a la señora Ortiz Martínez la cantidad de $1,600.00, en un término de treinta (30) días.

Insatisfecho, el 12 de marzo de 2026, el señor Sánchez Díaz presentó una *Reconsideración*, la cual fue denegada mediante *Resolución en Reconsideración*, emitida el 18 de marzo de 2026 y notificada el 20 de marzo de 2026. Inconforme aún, el 16 de abril de 2026, el señor Sánchez Díaz acudió ante esta Curia

---

[2] SUMAC, Entrada Núm. 4, Anejo 1, págs. 1-4.

mediante un recurso intitulado *Revisión de Decisión Administrativa*. El recurrente le imputó al DACO la comisión de los siguientes errores:

**Erró DACO al determinar en el presente caso que el querellado no cumplió con su obligación contractual de reparar la puerta izquierda delantera, cuando la prueba desfilada en la Vista Administrativa demuestra lo contrario.**

**Erró DACO al validar la Resolución basándose en los argumentos de la querellante. Y no en los hechos sustantivos en la Vista Administrativa.**

**Erró DACO en el proceso de inspección del auto.**

**Erró DACO al fijar la cuantía de $1,600 (dólares) con evidencia no apta y con testimonios contradictorios.**

En igual fecha, el recurrente presentó la regrabación de la Vista Administrativa celebrada el 4 de septiembre de 2025 ante el DACo.

El 30 de abril de 2026 emitimos una *Resolución* mediante la cual le concedimos al recurrente un término de dos (2) días para presentar la resolución recurrida. En cumplimiento, 4 de mayo de 2026, el señor Sánchez Díaz presentó la *Resolución* emitida por el DACo.

Por su parte, en igual fecha, la señora Ortiz Martínez, por derecho propio, notificó su *Oposición al Recurso de Apelación*. Perfeccionado el recurso y con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**A.**

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico ("LPAU"), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 96, 113-114 (2023). Es norma reiterada que, al revisar las determinaciones de los organismos administrativos, los tribunales apelativos le conceden gran consideración y deferencia, por la experiencia y el conocimiento especializado que estos poseen. *Íd.*

Por su parte, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117 (2019).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". De modo que, el análisis no implica una deferencia automática por parte del tribunal revisor. *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025). Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Superintendente*, 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Junta de Planificación*, 204 DPR 581 (2020).

Por consiguiente, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Graciani Rodríguez v. Garaje Isla Verde, supra*. Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque esta no tiene que ser la única o la más razonable. *Hernández Feliciano v. Mun. Quebradillas, supra*.

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia

sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Íd.*

Acorde con lo antes expuesto, la revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Íd.* Por tanto, si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar, con suficiente evidencia, que la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Capó Cruz v. Junta de Planificación, supra; Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad. *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

**B.**

El contrato es el negocio jurídico bilateral mediante el cual dos o más partes consienten para crear, regular, modificar o extinguir obligaciones. Art. 1230 del Código Civil, 31 LPRA sec. 9751. Las partes contratantes quedan obligadas a las condiciones y a los términos pactados cuando concurren los elementos de consentimiento, objeto y causa. Art. 1237 del Código Civil, 31 LPRA sec. 9771; *Engineering Services v. AEE,* 209 DPR 1012, 1027 (2022). En otras palabras, el contrato surge al momento en que las partes consienten en obligarse a cumplir con determinadas prestaciones. *Amador v. Conc. Igl. Univ. De Jesucristo,* 150 DPR 571, 581-582 (2000).

Atinente a la controversia ante nos, mediante el contrato de servicios, "el prestador se obliga a proveer, sin estar subordinado al comitente, un servicio mediante el pago de un precio". Art. 1381 del Código Civil, 31 LPRA sec. 10291. Así, el comitente queda obligado a: "(a) pagar el precio de los servicios; y (b)

proporcionar la colaboración necesaria para que los servicios puedan prestarse". Art. 1385 del Código Civil, 31 LPRA sec. 10311. Por otra parte, el prestador queda obligado a:

(a) **prestar los servicios según lo convenido y los conocimientos que exige el arte, la ciencia o la técnica correspondiente a la actividad constitutiva de los servicios**;

(b) proveer al comitente la información esencial sobre la ejecución;

(c) aportar los materiales utilizados corrientemente en la prestación de los servicios convenidos; y

(d) prestar los servicios dentro del tiempo convenido o en el que razonablemente corresponda. (Énfasis suplido). Art. 1386 del Código Civil, 31 LPRA sec. 10312.

En cuanto al precio de los servicios, el mismo "se determina por el convenio de las partes o, en su defecto, por la ley o los usos. Cuando no se haya convenido el precio ni exista ley ni usos aplicables, lo determina el tribunal." Art. 1384 del Código Civil, 31 LPRA sec. 10301.

**-C-**

El Reglamento de Procedimientos Adjudicativos, Reglamento Núm. 8034 del 14 de junio de 2011, regula los procedimientos adjudicativos presentados ante el DACo. Atinente a la controversia ante nos, la Regla 14.1 del Reglamento de Procedimientos Adjudicativos, establece que el DACo "podrá iniciar una investigación bajo los poderes y facultades de las Leyes y Reglamentos que administra, y en cualquier momento antes o después de radicada una querella". A esos efectos, el DACo posee la facultad de ordenar la inspección del objeto o servicio llevado a cabo que motivó la presentación de la querella, por un representante de la agencia o por una persona autorizada. Regla 14.2 del Reglamento de Procedimientos Adjudicativos.

La inspección será realizada por una persona **con conocimientos mínimos sobre el tema** en torno al cual gire la controversia. *El Trámite de Resolución de Querellas en el DACo*, elaborado por la Oficina del Secretario, Diciembre de 2021, pág. 6. Su propósito será "facilitar la tarea del juez administrativo, dándole elementos que le ayuden a dilucidar la procedencia o no de lo alegado en la querella ante su consideración". *Íd.*

Completada la inspección, la persona encargada deberá preparar un informe detallado, el cual incluirá un estimado del costo de las piezas, artículos, materiales y de los servicios necesarios para un remedio adecuado. Regla 14.4 del Reglamento de Procedimientos Adjudicativos. Así, entonces, se le notificará el informe a las partes, quienes tendrán un término de quince (15) días para presentar cualquier objeción. Reglas 15.1 y 15.2 del Reglamento de Procedimientos Adjudicativos. Si no se presentan objeciones, el informe se considerará estipulado por las partes. Regla 15.3 del Reglamento de Procedimientos Adjudicativos.

**III.**

En caso de autos, el recurrente nos solicita que revisemos la *Resolución* emitida por el DACo mediante la cual declaró *Ha Lugar* la *Querella* presentada por la recurrida y le ordenó al recurrente la devolución de la cuantía pagada por concepto del trabajo realizado. Sostiene que la prueba desfilada demostró que cumplió con su obligación contractual de reparar la puerta del vehículo. Expone, además, que la decisión del DACo fue basada en los argumentas presentados por la parte recurrida, en lugar de los hechos sustantivos. Asimismo, manifiesta que la inspección del vehículo no se realizó conforme a derecho, ya que no se le notificaron las "advertencias" del proceso y debido a que el Juez Administrativo no es perito en hojalatería y pintura. Por último, aduce que no existía evidencia para determinar que la cuantía pagada fue de $1,600.00, ya que el documento catalogado como un recibo fue un mero estimado entregado a la señora Ortiz Martínez.

Por entender que se encuentran intrínsicamente relacionados, ya que impugnan la apreciación de la prueba realizada por el DACo, los errores primero y segundo serán discutidos de manera conjunta. Aquilatada la prueba testifical, en conjunto con las fotografías presentadas por la señora Ortiz Martínez y la inspección ocular del vehículo, el DACo concluyó que el trabajo completado por el recurrente se alejó de la mejor práctica de la hojalatería y pintura reconocida en Puerto Rico. Sabido es que las determinaciones de hechos realizadas por el DACo merecen la mayor deferencia.

Tras un examen sosegado de la regrabación de la Vista Administrativa, constatamos que las partes suscribieron un contrato de servicios mediante el cual acordaron que el señor Sánchez Díaz realizaría un trabajo de hojalatería y pintura en el vehículo de la señora Ortiz Martínez, por un precio el cual sería fijado una vez completada la labor. Culminado el trabajo y devuelto el vehículo a la señora Ortiz Martínez, estando en el taller del recurrente, la recurrida se percató de una serie de desperfectos, particularmente relacionados al trabajo de pintura, y así se lo informó al ayudante del recurrente, ya que este no se encontraba presente. No obstante, el ayudante, le indicó que la pintura podría ser removida con agua. Ante esto, el ayudante le entregó a la señora Ortiz Martínez un recibo intitulado "Estimado" por la cantidad de $1,600.00, por concepto del trabajo realizado, los cuales la recurrida pagó.

Luego de marcharse del lugar y llegar a su residencia, la señora Ortiz Martínez se percató de otros desperfectos. Consecuentemente, se lo informó al señor Sánchez Díaz, quien accedió a arreglarlo, ya que el trabajo se encontraba dentro del periodo de garantía. Sin embargo, llevado a cabo el arreglo, la señora Ortiz Martínez permaneció insatisfecha con la labor del señor Sánchez Díaz. A esos efectos, por tercera ocasión, el recurrente ofreció reparar nuevamente la pintura escurrida, lo cual la recurrida rechazó. Como corolario, la señora Ortiz Martínez presentó la presente *Querella* y le solicitó al señor Sánchez Díaz la devolución de los $1,600.00 pagados.

Conforme a lo anterior, concordamos con el criterio del DACo a los efectos de concluir que quedó evidenciado que el señor Sánchez Díaz incumplió con el contrato de servicios, al no realizar el trabajo de hojalatería y pintura de manera adecuada. Ante ello, no intervendremos con las determinaciones de hechos formuladas por el DACo.

Mediante el tercer error, el señor Sánchez Díaz arguye que la inspección ocular del vehículo no fue llevada a cabo conforme a derecho. Especifica que debían instruirle que tenía un término de quince (15) días para presentar objeciones a la inspección. Añade que el Juez Administrador no contaba con el peritaje en hojalatería y pintura necesario para inspeccionar el vehículo.

Según hemos reseñado, el mecanismo de inspección se encuentra disponible para facilitar a los jueces administrativos en la resolución de las querellas presentadas ante sí. Contrario a lo alegado por el recurrente tal inspección no requiere que la persona que la lleve a cabo tenga un peritaje en la materia de la controversia. En cambio, quien realice la inspección solo deberá tener un conocimiento mínimo sobre el tema.

Ciertamente, el DACo es la agencia con el *expertise* necesario para dilucidar la controversia de autos. Como resultado, resulta forzoso concluir que el Juez Administrativo, como el ente a quien se le delegó la facultad de resolver las querellas presentadas ante el DACo, posee el conocimiento mínimo necesario para llevar a cabo la inspección del vehículo.

Por otra parte, no surge del expediente que el Juez Administrativo realizó un informe de inspección. Resulta menester destacar que, ante al trámite extraordinario de los procedimientos, debido a la muerte de la Lcda. Delia Pagán Robles (Q.E.P.D.), la inspección del vehículo fue realizada, el 19 de febrero de 2026, posterior a la celebración de la Vista Administrativa. Como consecuencia, previo a la inspección del vehículo, el Juez Administrador, nombrado en sustitución, ya había tenido la oportunidad de examinar la prueba testifical y documental. Así las cosas, el día después de llevar a cabo la inspección, emitió la *Resolución* recurrida, sin necesidad de suscribir un informe. Notificada la *Resolución*, mediante la solicitud de reconsideración instada el 12 de marzo de 2026, el recurrente tuvo la oportunidad de presentar sus objeciones a la inspección.

A través del cuarto error, el recurrente sostiene que no existe prueba que evidencia que la señora Ortiz Martínez pagó $1,600.00 por el trabajo realizado. Precisa que el supuesto recibo que obra en autos solo es un estimado y, por tanto, no puede ser utilizado como fundamento para determinar la cuantía pagada por la recurrida. Siendo así, razona que el DACo incidió al ordenarle la devolución de la mencionada cantidad de dinero.

Sobre la controversia relacionada al estimado/recibo entregado a la recurrida y el monto pagado, advertimos que el recurrente no presentó prueba

documental en contra y tampoco testificó a esos efectos. Sin embargo, la señora Ortiz Martínez afirmó mediante testimonio que, a pesar de que el documento se intitulaba como "Estimado", el mismo fue entregado en calidad de recibo por el ayudante del señor Sánchez Díaz. En ausencia de evidencia que refute lo alegado, no nos parece errado que el DACo hubiera determinado que el documento presentado en evidencia constituía un recibo válido para establecer el monto pagado.

Así pues, en ausencia de abuso de discreción, arbitrariedad, ilegalidad o actuación irrazonable, no hallamos razón para apartarnos de la norma de deferencia que los tribunales deben observar respecto a los dictámenes finales de los foros administrativos. Por tal razón, procede que se confirme el dictamen recurrido.

## IV.

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones